# Richmond

## GENERAL BRONZE CORPORATION v. NICHOLAS KOSTOPULOS.

November 27, 1961.

Record No. 5261.

Present, All the Justices.

*L. S. Parsons, Jr.* (*Parsons, Stant & Parsons,* on brief), for the plaintiff in error.

*Augustus Anninos* and *Guy E. Daugherty* (*Howell, Anninos & Daugherty,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Nicholas Kostopulos, appellee, instituted an action at law against General Bronze Corporation, appellant; Construction Supply Corporation, and Joe Tugwell for property damages he sustained by rain water leaking through sliding glass doors into the rooms of his motel, which was constructed by Tugwell, the general contractor, and completed in May 1958. In his motion for judgment he alleged that Tugwell was negligent in the installation of the doors; that Construction Supply Corporation was negligent in assembling the doors received from the manufacturer, and that General Bronze Corporation, the manufacturer, was negligent in the design and construction of the doors. He further alleged that the manufacturer had breached its implied and express warranties of fitness and quality. At the conclusion of plaintiff's evidence, the defendants moved to strike plaintiff's evidence. The motion was granted as to Tugwell and summary judgment was entered for him. As to the other defendants, the court sustained the motion as to liability based upon warranty and overruled it as to their liability based on negligence. At the conclusion of all the evidence, plaintiff's motion for a non-suit as to Construction Supply Corporation was granted. General Bronze Corporation renewed its motion to strike plaintiff's evidence on the ground that the evidence failed to show it was negligent, and the motion was overruled. The question of liability was confined to that of negligence in the "construction and design" of the doors. The jury returned a verdict in the sum of $11,332.75 against General Bronze Corporation, and the judgment rendered thereon gives rise to this appeal. Tugwell was not made an appellee.

The litigants involved in this appeal will be referred to at times as plaintiff and defendant in accordance with the positions they occupied in the court below.

Defendant has assigned fifty-five errors. They charge that the court erred in admitting and refusing certain evidence; in refusing to permit a view of the premises; in striking plaintiff's evidence as to Tugwell; in permitting plaintiff to take a non-suit as to Construction Supply Corporation; in the granting and refusing certain instructions; in refusing to declare a mistrial because of improper argument of counsel; in overruling defendant's motion to strike plaintiff's evidence, and in overruling defendant's motion to set aside the verdict as being contrary to the law and evidence and enter judgment for defendant, or in the alternative grant it a new trial.

In the summer of 1957, plaintiff, Nicholas Kostopulos, employed John Waller as his architect to design and supervise the construction of a motel, known as Saxony Motel, located on the water front of Virginia Beach. Joe Tugwell, a general contractor, was awarded the contract to construct the motel. After consulting with Edward J. Ward, sales representative of General Bronze Corporation, and reading its published brochure concerning the efficiency of its products, Waller specified for the job 21 "Coronet" aluminum sliding doors manufactured by defendant "or equal". The "Coronet" doors were purchased through Construction Supply Corporation, which assembled and delivered them to the job site. They were installed by Tugwell on the eastern or water front side of the building, and were recessed from the building line five feet, four inches, so that they were framed by sidewalls, roof and floors of masonry.

Beginning several months after completion of the motel there were rains driven by east or northeast winds of velocity ranging from 29 to 46 miles per hour. On each such occasion the doors leaked and the water damaged the rugs, drapes and curtains in the rooms. Plaintiff notified the architect, contractor, supplier and the manufacturer that the doors leaked. Various tests and adjustments were made, but the doors continued to leak and cause damage. There was evidence to the effect that the door was not properly designed to repel water. On the other hand there was evidence to the effect that the doors were not defective. Tugwell testified that he followed Waller's instructions in installing the doors, but was not furnished defendant's assembly manual which showed how the doors should be installed. Defendant maintained that the leakage was due to the improper installation of the doors rather than design.

As has been said, the question of defendant's liability was confined by the trial court to that of negligence in the design and construction of the doors. Defendant contends that the court erred in refusing to strike plaintiff's evidence as to this phase of liability because the evidence was insufficient to establish such negligence. With this contention we agree. The doors in question were a standard product. They were not manufactured carelessly or negligently, but were manufactured according to plan or design. Can it be said that defendant was negligent if the doors were manufactured according to design? The evidence shows the manufacturer had tested the "Coronet" door under extreme conditions for strength and water tightness and found it to be efficient. There were no hidden defects known to the manufacturer. The fact that plaintiff's doors did not repel water as expected is not proof of negligence in the design and construction. There might have been intervening causes. Tugwell said he followed Waller's instructions in installing the doors, and was not furnished a copy of the manufacturer's assembly manual for installation. To constitute negligence there must be a duty owed and a breach of that duty. Here there was no showing of any duty owed by defendant to plaintiff in the design and construction of the doors. Upon consideration of the entire record, we find that the evidence was insufficient to establish that defendant was negligent in the design and construction of the doors.

■ Moreover, defendant argues that a plaintiff cannot recover from a manufacturer of products not inherently dangerous alleged to have caused injury to property, on the basis of negligence, when there is no privity of contract between them.

In 78 A. L. R. Anno. 2d, § 7, p. 704, it is stated:

"* * * [T]raditionally, privity has been viewed as prerequisite to recovery in a negligence action growing out of product-caused injury; hence, in a negligence action against a producer or seller of a product of the kind now under discussion, [building supplies, etc.] recovery will be denied if privity did not exist as between the injured person and the defendant, unless the jurisdiction is one in which the privity requirement has been repudiated in toto or in which an exception to the requirement has been drawn with respect to a particular classification of cases which comprehends injury caused by such a product." See also Annotation, 74 A. L. R. 2d, 1111 et seq.

Virginia is not among those jurisdictions which have repudiated the privity requirement in toto. We have, however, repudiated it, insofar as recovery for breach of warranty is concerned, with regard to certain

food stuffs for human consumption in sealed packages or containers. *Swift and Company* v. *Wells*, 201 Va. 213, 110 S. E. 2d 203. In many jurisdictions privity of contract is not required for recovery for negligence by a remote vendee where the manufactured product is inherently dangerous, and we are in accord with that view. A product is inherently dangerous when the danger of injury stems from the product itself, and not from any defect in it. 74 A. L. R. Anno. 2d, § 8, p. 1146. There is nothing inherently dangerous about the doors in question and they do not fall within this classification. In *Harris* v. *Tractor Company*, 202 Va. 958, 121 S. E. 2d 471, liability was confined to the question of negligence in the installation of the product rather than in its manufacture. The precise question under discussion was not an issue there. The present action is not such a case as may be maintained on the basis of negligence without privity of contract.

We turn next to plaintiff's assignments of cross-error. They allege that the court erred in ruling that there was no liability upon defendant based upon an implied or express warranty; in refusing Instructions Nos. P-2 and P-4 tendered by plaintiff, and in granting any instructions for defendant, because it was negligent in the manufacture and design of the doors as a matter of law.

Clearly the court was correct in holding that there was no liability on defendant based upon implied warranty as there was no privity of contract between the parties. *Harris* v. *Tractor Company, supra.*

We also find that plaintiff's evidence falls short of being sufficient to present a jury question on express warranty. Ward, defendant's sales representative, was called by plaintiff and examined as an adverse witness. He was asked: "All right, sir. Did you assure Mr. Waller that this door would withstand the wind and rain conditions at Virginia Beach?" His reply was: "To my recollection that question did not come up, no, sir."

Elliott Haycox, president of Construction Supply Corporation, was called by plaintiff as an adverse witness. On cross-examination by counsel for said corporation he testified that when he learned about the contemplated construction of the motel he and Ward called on Waller, taking a sample "Coronet" door with them, to interest him in specifying the door for the motel, and that "as an outcome of this visit and maybe another visit or two, the Coronet door was specified" for use in the motel. On redirect-examination he was asked:

"Q. He [Waller] said he wanted one that would withstand wind and rain at the Beach? That was his problem that he was worried about?

"A. He wanted a door that was not going to leak, yes, sir."

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Q. And he said this door would not leak at the Beach, didn't he?

"A. I don't think Mr. Ward would attempt to sell a door that was going to leak, nor would I.

"Q. I am asking you did he tell Mr. Waller that this door would stand the conditions at Virginia Beach?

"A. Now whether he told him that or not, I could not say, but I state again that Mr. Ward knew where the Coronet doors were to be used in Mr. Kostopulos's motel, and *new* the location of it."

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Q. And Mr. Ward said this is the door to use at the Beach?

"A. That was recommended to Mr. Waller, and Mr. Waller accepted it."

On re-cross examination by counsel for defendant, the witness was asked:

"Q. Mr. Haycox, on direct examination or, rather, on adverse witness cross-examination Mr. Daugherty made a statement to the effect that Mr. Waller—did Mr. Waller ask a specific question. Now I call this to your mind: he said, 'Didn't Mr. Waller say he wanted a door that would withhold wind and rain at Virginia Beach?' Now I ask you, sir, did Mr. Waller actually make that statement as far as you can recall?

"A. So far as I can recall he did not."

 Waller was not called to testify for plaintiff. However, he was called by defendant Construction Supply Corporation as an adverse witness to testify in its behalf. His testimony tended to show that a warranty was made direct to him as plaintiff's architect by Ward, sales representative of General Bronze Corporation. But since his testimony was introduced after plaintiff had rested his case and the court had struck the evidence as to warranty and no motion was made requesting the court to reconsider its ruling on the motion to strike, plaintiff was not entitled to the benefit of this testimony. Thus we hold that the court did not err in ruling there was no liability on defendant based upon express warranty.

The remaining assignments of cross-error relate to the refusal of the court to grant, at the instance of plaintiff, Instructions P-2 and P-4, and to the granting of any instructions for defendant. These assignments concern defendant's liability for negligence in the construction and design of the doors. Since we hold that such alleged

negligence should not have been submitted to the jury, these assignments of cross-error are without merit.

Having concluded that the trial court erred in failing to strike plaintiff's evidence as to defendant's liability based on negligence and was correct in striking plaintiff's evidence as to warranty, the verdict is set aside, the judgment reversed and final judgment is here entered for defendant.

*Reversed and final judgment.*