Eugene A. COTTON, Appellant,

v.

**BUCKEYE GAS PRODUCTS COMPANY.**

No. 87–7072.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 5, 1988.

Decided March 4, 1988.

Marc Fiedler, with whom William P. Lightfoot Washington, D.C., was on the brief for appellant.

Larry B. Lipe, Tulsa, Okl., with whom Bernard J. Casey Washington, D.C., was on the brief for appellee.

Before RUTH BADER GINSBURG, BORK *, and WILLIAMS, Circuit Judges.

Opinion for the Court filed by *Circuit Judge* WILLIAMS.

WILLIAMS, Circuit Judge:

Plaintiff Eugene A. Cotton seeks damages for injuries that he suffered when propane gas supplied by defendant Buckeye Gas Products Company burst into flames. He contends that Buckeye failed to warn him of the dangers of its product. The jury delivered a verdict for Cotton. The district court granted judgment notwithstanding the verdict on the ground that Cotton's injuries were not proximately caused by defendant's conduct. Having reviewed all the evidence in the light most favorable to Cotton, we uphold the district court's judgment n.o.v. In our view, reasonable jurors could find neither that Buckeye breached a duty to warn nor that Cotton's injuries were proximately caused by any inadequacy in defendant's warnings.

## I. BACKGROUND

On the night of January 27, 1985 Cotton, an employee of Miller & Long, a concrete construction company, was performing heater watch duty at a building under construction on Leesburg Pike in Tysons Corner, Virginia. This task consists of monitoring propane-fueled portable heaters used to cure concrete in frigid weather and changing propane-filled cylinders as they run low on gas. The propane cylinders used on the night of January 27 were supplied by Buckeye. The areas in which the heaters and cylinders were contained were wrapped, ceiling to floor, with heavy poly-

ethylene curtains in order to contain the heat. When Cotton and his co-worker removed used cylinders from heaters they stored them on the same floor where they had been in use. This inside storage followed Miller & Long's established weekend practice (January 27 was a Sunday). The practice was in flat disregard of the instructions in a National LP Gas Association pamphlet ("NLPGA pamphlet") that Buckeye delivered to its customers as a routine matter, Tr. at 98–99, 101, specifying that cylinders not in use should be stored "outside at ground level." Appendix to Appellant's Brief ("App.") at 7. (On weekdays Miller & Long followed the pamphlet's storage directions.)

Although Cotton's superiors at Miller & Long instructed him to close the valves on the cylinders when changing or moving them, he did not do so on the night involved. Fire investigators at the scene of the accident found the valves wide open on 35 used but not empty propane cylinders. Tr. at 670–71, 696; Appellee's Appendix at 3. Gas escaping from these cylinders ignited; the resulting flames severely burned Cotton. Tr. at 361–64. The Fairfax County Fire Marshall's Office investigated the fire and concluded that it would not have happened if the valves had been closed. Tr. at 684–85; *see also* Appellee's Appendix at 10.

## II. STANDARD OF REVIEW, SUFFICIENCY OF EVIDENCE AND CHOICE OF LAW

Just below the surface of this case are vexing problems of choice of law, none of which has been briefed by the parties. We believe that in practice similarity in law between the relevant jurisdictions makes it unnecessary to address them.

First is the relation between this court and the federal trial court whose judgment is under review. We recently stated that the question we must ask on appeal is "the same question that the district court asked initially in considering the motion [for judgment n.o.v.]." *McNeal v. Hi-Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 640 (D.C.

---

* Circuit Judge Bork was a member of the panel but did not participate in this decision.

Cir.1988). Thus we make an independent review of the record, without deference to the trial court. *Id.* The assumption in *McNeal,* also a diversity case, was that our (federal) rule controlled, and, no claim to the contrary having been made, we follow that assumption.

The second issue is the standard to be applied by the trial court (and ourselves) in measuring the sufficiency of the evidence. It would appear that the "strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts," relied on in *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958), would militate strongly toward choice of the federal rule. Surprisingly, there is a sharp split in the circuits on the issue. *Compare, e.g., Wratchford v. S.J. Groves & Sons Co.,* 405 F.2d 1061, 1065–66 (4th Cir.1969) (federal), *with Kuziw v. Lake Engineering Co.,* 586 F.2d 33 (7th Cir.1978) (state); *and see* 19 C. Wright & A. Miller, *Federal Practice & Procedure* § 2525 n. 69 (1971 & Supp.1987). Of course, if local law controlled here, the further issue would arise under *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), whether the District of Columbia would apply its own standard or that of the source of substantive law, here assumed by all parties to be Virginia.

So far as we can determine, however, the choice is of no moment here: all three possible jurisdictions appear to apply the same standard. As we said in *McNeal,* the jury's verdict must stand unless "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." 836 F.2d 640–41 (quoting *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.1984) (other citations omitted)). To the same effect are *District of Columbia v. Cassidy,* 465 A.2d 395, 397 (D.C.App.1983) (District of Columbia rule); *Adams v. Allen,* 202 Va. 941, 121 S.E.2d 364, 368 (1961) (Virginia rule).

Finally, of course, is the matter of substantive law. The parties agree that Virginia's controls. In the absence of any contest we have no reason—if indeed we had the power—to consider alternatives.

The sort of fact-specific inquiry on which we must embark takes place in a sort of twilight zone between the substantive rule and sufficiency-of-the-evidence standard. It is virtually impossible for courts to state precisely where one leaves off and the other begins. As Virginia's substantive law controls and its sufficiency standard is the same as that of our circuit and the District of Columbia, clearly Virginia cases testing sufficiency in the failure-to-warn context are the best source of authority.

### III. DUTY TO WARN

Virginia has routinely applied the Restatement (Second) of Torts § 388 (1965) to govern a supplier's duty to warn about dangers associated with the use of its product. *See Featherall v. Firestone Tire & Rubber Co.,* 219 Va. 949, 252 S.E.2d 358, 366 (1979). § 388 provides that the manufacturer of a chattel is liable when it

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

The cylinders supplied to Miller & Long by Buckeye bore labels clearly and conspicuously warning that the cylinders contained "flammable" gas and should not be used or stored in "living areas." App. at 5 (Def. Exh. 5). According to plaintiff, this warning was inadequate because it failed (1) to warn about the explosive properties of propane; (2) to instruct users to shut the valves on used cylinders; (3) to advise users not to use or store the cylinders in enclosed, unventilated areas; and (4) to warn that gas might escape from used cylinders believed to be empty.

Failure-to-warn cases have the curious property that, when the episode is examined in hindsight, it appears as though addi-

tion of warnings keyed to a particular accident would be virtually cost free. What could be simpler than for the manufacturer to add the few simple items noted above? The primary cost is, in fact, the increase in time and effort required for the user to grasp the message. The inclusion of each extra item dilutes the punch of every other item. Given short attention spans, items crowd each other out; they get lost in fine print. Here, in fact, Buckeye responded to the information-cost problem with a dual approach: a brief message on the cannisters themselves and a more detailed one in the NLPGA pamphlet delivered to Miller & Long (and posted on the bulletin board at the Leesburg Pike construction site where Cotton was employed, Tr. at 761).

Plaintiff's analysis completely disregards the problem of information costs. He asserts that "it would have been neither difficult nor costly for Buckeye to have purchased or created for attachment to its propane cylinders a clearer, more explicit label, such as the alternatives introduced at trial, warning of propane's dangers and instructing how to avoid them." Brief for Appellant at 25. But he offers no reason to suppose that any alternative package of warnings was preferable. He discounts altogether the warnings in the pamphlet, without even considering what the cannister warning would have looked like if Buckeye had supplemented it not only with the special items he is personally interested in—in hindsight—but also with all other equally valuable items (*i.e.*, "equally" in terms of the scope and probability of the danger likely to be averted and the incremental impact of the information on user conduct). If every foreseeable possibility must be covered, "[T]he list of foolish practices warned against would be so long, it would fill a volume." *Kerr v. Koemm*, 557 F.Supp. 283, 288 n. 2 (S.D.N.Y.1983). Unlike plaintiff, we must review the record in light of these obvious information costs.

■ Cotton's first complaint is that in neglecting to mention that propane is explosive, as well as flammable, the label failed to "convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person." Brief for Appellant at 21 (quoting *Spruill v. Boyle–Midway, Inc.*, 308 F.2d 79, 85 (4th Cir.1962)). True, warnings must identify the nature of a product's risks to ensure that the user is apprised of their seriousness. But the record here gives no suggestion of any relevant difference between "flammable" and "explosive." Cotton admitted that he knew propane was flammable and could ignite and burn him. Tr. at 640–41. That is precisely what happened. His injuries were exclusively burns, deriving exclusively from the gases' burning. Although the gas "exploded," Tr. 361–62, he suffered no injury from that fact insofar as it may be different from simply igniting. Cotton was thus fully aware of the relevant essential consequences of allowing gas to escape from the cylinders.

■ Although the other warnings that plaintiff contends should have been given were not contained in the cylinder labels, they were embodied in the NLPGA pamphlet. It warned that the cylinders should be used only in ventilated areas and that the cylinder valves should be closed. App. at 6–7 (Def. Exh. 1). (While the pamphlet did not explicitly warn that the valves should be closed on cylinders withdrawn from use because they might still have propane left in them, this was inferable as a matter of common sense from the pamphlet's insistence on keeping valves shut, on specific safety criteria for valves, and on proper use of valves. Again, a warning need not dot every i.)

The Virginia case most on point suggests that its courts would not allow a jury to find the warning defective on this record. In *Sadler v. Lynch*, 192 Va. 344, 64 S.E.2d 664, 667–68 (1951), plaintiff's decedent was killed when electric current ran from a power cable through a crane (and its bucket) to a truck. He had been told that he should "stay clear of the truck and get out of the way of it," and that it was dangerous to be around the crane while it was operating under power lines. 64 S.E.2d at 666. Instead, he approached and touched the truck. The court concluded that the warning was enough, even though it did

not spell out the point that the truck would be charged with a deadly current "if the crane touched the wire at the same time as the bucket touched the truck." *Id.* at 667. Obviously an imaginative and sympathetic jury could have a flight of fancy by which omission of this detail rendered the warning unreasonable. Virginia said No.

Plaintiff relies substantially on appellate and district court decisions in the Fourth Circuit allowing juries wide leeway in finding warnings inadequate. *See, e.g., Spruill v. Boyle–Midway, Inc.,* 308 F.2d 79 (4th Cir.1962) (infant dies from swallowing small quantity of furniture polish; adequacy of warning, "May be harmful if swallowed especially by children," in small print on bottle, was question for jury); *Whitehurst v. Revlon, Inc.,* 307 F.Supp. 918, 921 (E.D.Va.1969) (smoker burned when her cigarette ignited fumes from fingernail polish; question for jury whether warning, "DO NOT HEAT OR USE NEAR FIRE," was adequate).[1]

We think these cases distinguishable. In *Spruill,* for example, the court emphasized that the warning that was given "was placed so as to conceal it from all but the most cautious users. It is located in the midst of a body of print of the same size and color, with nothing to attract special attention to it except the words 'Safety Note'." 308 F.2d at 86. By contrast, Buckeye's label warned in large, bold letters that the propane was flammable. In *Whitehurst,* the gap between the injunction not to "use near fire" and the reality that a mere cigarette near the fingernail polish could be hazardous seems greater than any shortfall claimed here.

But even if not distinguishable, these cases seem untrue either to the agreed-on standard for sufficiency of the evidence or to Virginia substantive law. The cases show little concern that the jury verdict be one that *reasonable* jurors could have reached, or for *Sadler's* recognition that

warnings need not spell out the risk in intricate detail.

Quite apart from the wording of the Buckeye warning, Buckeye had reason to rely on Cotton's employer, Miller & Long, to alert Cotton to the hazards of propane. Under the Restatement (Second)—in which the Virginia courts have placed much confidence—this provides a further basis for exoneration of Buckeye as a matter of law. Comment *n* to § 388 makes clear that a product supplier may satisfy its duty to warn by providing information of the product's dangers to a third person upon whom it can reasonably rely to communicate the information to the product's ultimate users. *Beale v. Hardy,* 769 F.2d 213, 214–15 (4th Cir.1985), exemplifies this view, finding that a firm that supplied silica to an employer with extensive knowledge of its dangers was as a matter of law absolved of liability for any failure to warn the employees of such dangers.

Comment *n* is not explicitly addressed to an *employer* as intermediary, but notes how the plausibility that a buyer will pass on hazard information will vary among buyers (*e.g.,* contrasting "ordinary normal man to whose discredit the supplier knows nothing" with party intending to resell and whose resale may be impeded by full disclosure). Insofar as categories of buyers may control, an employer-purchaser would seem most likely to be reliable. *Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1456–58 (6th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), specifically noted the point. Applying comment *n* where the supplier of a toxic chemical to General Motors relied on it to inform its workers of the hazards, the court observed that the employer-purchaser's duty to provide its employees a safe place to work supported the conclusion that reliance was reasonable. *See also Marshall v. Ferguson Co.,* 623 F.2d 882, 887 (4th Cir.1980) (affirming directed verdict for manufacturer of spent hops conveyor system on

1. Cotton also relies on *McClanahan v. California Spray–Chemical Corp.,* 194 Va. 842, 75 S.E.2d 712 (1953), to support his charge that defendant's warning was inadequate. But there the defendant's duty to warn was governed by specific insecticide statutes enacted to provide "a higher and surer degree of protection" than that afforded by common law remedies. 75 S.E.2d at 717–18.

ground that manufacturer had right to rely on the system's purchaser to provide the necessary warnings to its employees, so that manufacturer had no duty to warn the employees directly).

It was eminently reasonable for Buckeye to rely on Miller & Long to instruct its employees on the proper handling of propane. As noted above, it had given Miller & Long the NLPGA pamphlet, which contained instructions on the safe use of propane. It knew that Miller & Long was a well-established concrete construction company that had purchased propane for many years from several suppliers. Tr. at 84–85, 95–96. It knew that Miller & Long had its own safety department and a good safety record. Tr. at 84–85. Buckeye representatives had visited a number of Miller & Long sites and verified that Miller & Long maintained proper outside storage and filling facilities for the propane cylinders. (We can find no evidence that Buckeye was aware of Miller & Long's weekend storage practice, though plaintiff claims the contrary without citation in his Brief at 24.) On top of that, Buckeye offered to train Miller & Long and its employees in the safe use and handling of the propane cylinders. Tr. at 89–90, 97–98. In rejecting the offer, Miller & Long represented that the company was knowledgeable in the use and handling of propane and stressed that it had its own safety director and employee safety training program. Tr. at 89–90, 97–98.

In light of the warnings on the propane cylinder labels and in the NLPGA pamphlet, as well as Buckeye's ample reasons to rely on Miller & Long to train its employees adequately, we hold that reasonable jurors could not find that Buckeye breached any duty to warn.

## IV. PROXIMATE CAUSE

■ Under Virginia law, proximate cause is "'that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred.'" *Coleman v. Blankenship Oil Corp.*, 221 Va. 124, 267 S.E.2d 143, 147 (1980) (quoting *Beale v.*

*Jones*, 210 Va. 519, 171 S.E.2d 851, 853 (1970)). We agree with the district court that under Virginia law "reasonable jurors cannot disagree that defendant's acts were not the efficient proximate cause of plaintiff's injuries." App. at 3.

We believe no reasonable juror could find that further warnings would have averted the accident. As found by the district court, Cotton knew of the dangers associated with working with propane gas. He knew that propane was flammable. Tr. at 331, 640–41. He also knew that any propane remaining in a cylinder whose valve was left open would escape, Tr. at 640, could be set on fire, and could burn him. Tr. at 330, 641. Cotton testified that he was trained on the job to close the valves on the cylinders, Tr. at 606–07, but admitted that on the night in question, he disregarded his employer's instructions and failed to close the valves. Tr. at 355, 610–11. Additionally, the NLPGA pamphlet supplied by Buckeye and posted at the job site specifically directs the user to store the cylinders "outside at ground level" and to "[m]ake sure cylinder valves are closed." App. at 7 (Def. Exh. 1).

Plaintiff responds with the distinction, already considered above, between notice that the gas was "flammable" and the (omitted) notice that it was explosive. He testified at trial that he believed it was safe to store used propane cylinders in unventilated areas as long as there was no flame, regardless of whether the valves were open, Tr. at 329–31. The additional word "explosive," plus a warning to store in ventilated areas, would have led him to take necessary precautions: either to shut the valves or at least to have knocked holes in the plastic sheeting. Tr. at 333.

We think this theory utterly implausible. Ordinary people know that fire is potentially as lethal as explosion, and flammability connotes extreme readiness to burst into flames. Only by the wildest—forbidden—speculation could a jury suppose that someone who left valves open in the face of explicit warnings about fire and instructions to keep valves closed would modify

his conduct merely because of an added reference to explosion.

The theory on knocking holes in the plastic fails on two counts. As with the valve-closing theory, it assumes about plaintiff what is manifestly implausible. One who leaves valves open in disregard of his employer's direct oral instructions is hardly likely, merely because of warnings of the need for ventilation (coupled with whatever additional information a reasonable supplier would have regarded as of equal value, *see* p. 938 *supra*), to embark on an ambitious program of plastic piercing. Second, there is no evidence that such a program would have prevented the fire. Plaintiff points to testimony of Stephen Wilshire, the Virginia Occupational Safety and Health Administration compliance officer charged with investigating the accident, that "if the propane cylinders had been stored outside and the valves had been in a closed position ... the potential for fire would have been greatly reduced or eliminated." Tr. at 62. Plaintiff also notes testimony of Charles Greene, an industrial safety expert witness, that if the propane cylinders had been stored outside the building, even with the valves open, there would have been no explosion. Tr. at 508. But evidence that outside storage might have prevented the accident hardly indicates that knocking holes in the plastic covering would have done so.

Again Cotton directs us to federal cases arising from Virginia and reflecting an expansive concept of proximate cause. *See, e.g., Spruill v. Boyle–Midway, Inc.,* 308 F.2d 79, 87–88 (4th Cir.1962) (mother's negligence in leaving furniture polish labeled "May be harmful if swallowed especially by children" near a child was not an efficient, intervening cause because it was

foreseeable); *Barnes v. Litton Indus. Prods., Inc.,* 555 F.2d 1184, 1187–88 (4th Cir.1977) (jury question whether failure to warn of danger of drinking "burning alcohol" (so labelled) proximately caused plaintiff's injuries arising from such drinking); *Whitehurst v. Revlon, Inc.,* 307 F.Supp. 918, 921 (E.D.Va.1969) (where plaintiff smoked a cigarette while applying fingernail polish out of a bottle labeled with the warning "DO NOT HEAT OR USE NEAR FIRE," and polish burst into flames, jury was entitled to decide whether defects in warning proximately caused the burns).

Plaintiff argues that if juries were allowed to find that Spruill's placement of the furniture polish near her child's crib, Barnes's consumption of burning alcohol, and Whitehurst's smoking of her cigarette while applying fingernail polish did not constitute intervening causes superseding any inadequate warning, *a fortiori* a jury should be permitted to find that Cotton's conduct did not supersede any failure to warn in this case.[2] In none of these cases, however, were the warnings given as clear, or the plaintiff's indifference to them as blatant, as in the present case.

In any event, we again find ourselves unpersuaded that these cases catch the reality of Virginia law. In *Sadler v. Lynch, supra,* where plaintiff's decedent had touched the fatal truck against the defendant's instructions, the Virginia court had no hesitation in concluding that "his death came from his violation of a specific order to stay away from the source of danger." 64 S.E.2d at 667. It rejected the speculative possibility that additional detail in the warning would have persuaded the decedent to obey. We think the speculations proposed by plaintiff here no more acceptable. For a similar approach, see *Plante v.*

---

**2.** Plaintiff spends much time in his appellate brief responding to the district court's conclusion that "even if the defendant's degree of warning constituted a proximate cause, it was superseded by the intervening act of the valves being opened." App. at 3. Plaintiff maintains that he would not have left the valves open if he had been adequately warned of the dangers of doing so and that therefore his non-closure of the valves was not a superseding cause of Cotton's injuries, citing *Jefferson Hospital, Inc. v.*

*Van Lear,* 186 Va. 74, 41 S.E.2d 441, 444 (1947) ("An intervening cause will not be deemed to have broken the causal connection if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer.") and *Spruill,* 308 F.2d at 87. We agree that Cotton's failure to close the valves would not be an intervening cause if it actually was caused by an inadequate warning. It is plaintiff's theory that additional warnings would in fact have made a difference that we reject.

*Hobart Corp.*, 771 F.2d 617, 621 (1st Cir. 1985) (finds as a matter of law that additional warnings could have made no difference, as evidence "showed that [plaintiff] ... *in fact* understood the relevant dangers.... What would additional warnings have told them that they did not already know, or that would have made any difference?") (emphasis in original).[3]

\* \* \*

Because we find that reasonable jurors could not disagree that Cotton failed to establish by a preponderance of the evidence that Buckeye breached its duty to warn or that Buckeye's conduct proximately caused Cotton's injuries, we affirm the district court's judgment n.o.v.

3. Some jurisdictions, such as the District of Columbia, have adopted a "rebuttable presumption ... that the user would have read an adequate warning, and that in the absence of evidence rebutting the presumption, a jury may find that the defendant's product was the producing cause of the plaintiff's injury." *See McNeal v. Hi–Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 645 (D.C.Cir.1988) (quoting *Payne v. Soft Sheen Products, Inc.*, 486 A.2d 712, 725 (D.C.1985)); see also *Wolfe v. Ford Motor Co.*, 6 Mass.App. 346, 376 N.E.2d 143, 147 (1978) (listing jurisdictions adhering to such a presumption). Even if Virginia law established such a presumption (and there is no reason to think it does), we think Cotton's failure to shut the valves, given his awareness of flammability and receipt of instructions to shut them, rebutted it as a matter of law.