# Wytheville.

## STANDARD OIL COMPANY v. WAKEFIELD'S ADMINISTRATOR.

### JUNE 16, 1904.

1. DEATH BY WRONGFUL ACT—*Negligence—Privity.*—A person negligently using, or causing, or authorizing the use by another of a dangerous instrument or article under such circumstances that he knows, or should know, is likely to produce injury, is responsible for the natural and probable consequences of his act to any person injured who is not himself at fault. Such liability does not depend upon privity of contract, but arises from a general duty to the public.

2. DANGEROUS ARTICLES—*Gas Naphtha—Duty of Shipper to Use Safe Car for Delivery—Liability to Consignee's Servant.*—It is the duty of one shipping gas naphtha, or other article, either essentially dangerous or liable to become so, to so equip the cars upon which such article is loaded that it can be safely discharged in the ordinary way by the exercise of ordinary care. And this duty, even when not owing to the public generally, the shipper owes to the servants of the consignee, whose duty it is to unload the articles, although no privity of contract exists between the shipper and such servants.

3. PROXIMATE CAUSE—*Intervening Act.*—In order to excuse a party guilty of negligence on account of the intervening act of another, the intervening act must be the superseding or responsible cause of the injury. The liability is not averted if the act relied upon is one which might, in the natural or ordinary course, be anticipated, and defendant's negligence is an essential link in the chain of causation. In such cases defendant's negligence is the efficient and proximate cause of the injury.

4. PLEADING AT LAW—*Appellate Practice.*—When two of four counts in a declaration state a good cause of action, the case will not be reversed and remanded for a new trial, although the two other counts were bad, where the error was technical, and in no way prejudiced the defendant.

Opinion.

5. MASTER AND SERVANT—*Knowledge of Servant—Imputed to Master.*—
   Knowledge acquired by a servant whilst performing duties for the
   master in the scope of his employment is, for all judicial purposes,
   notice to the master.

Error to a judgment of the Law and Equity Court of the
city of Richmond in an action of trespass on the case, wherein
the defendant in error was the plaintiff, and the pláintiff in error
was the defendant.

*Affirmed.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* for the plaintiff in
error.

*Meredith & Cocke* and *H. R. Pollard,* for the defendant in
error.

BUCHANAN, J., delivered the opinion of the court.

On or about the 23d day of December, 1901, the Standard
Oil Company shipped in a tank car about 8,000 gallons of gas
naptha from Manchester, and delivered the same on the gasworks
siding of the Chesapeake and Ohio Railway Company, in the
city of Richmond, under a contract with that city, for use in its
gas plant.    The tank cars used for delivering the naptha were
provided by the Standard Oil Company.    Each had a dis-
charge pipe in the bottom of the tank some four inches in
diameter, and projecting ten or twelve inches below the bottom.
The pipe was threaded to receive and upon it was a cap screw.
Upon the upper part of the pipe is a valve to prevent the escape
of naptha.    In the lower part of the valve there are concaves
which permit the naptha to flow when the valve is raised.    An
inflexible iron rod is attached to the valve, and extends to or
near the top of the tank.    Near the upper end of the rod is a

coil wire spring, arranged to hold the rod down, and to keep the valve in position when closing the discharge pipe. The iron rod near the top has an arm attached to it, by using which the pressure of the spring can be relieved and the valve raised so that the naptha can enter the discharge pipe. The arm for raising the valve is fastened to the rod by an iron key passing through both. The rod and its attachments are covered by the dome of the car, on the top of which is a slide or man-hole large enough for a man to get inside the car. The oil is unloaded through the discharge pipe by unscrewing the cap on its lower end, and connecting the discharge pipe by a union with a pipe leading to the tanks of the city gas works. When this union or connection has been made the valve is raised by means of the arm keyed to the rod, and the naptha permitted to flow into the city tank. The place for unloading tank cars was on a trestle twenty or twenty-five feet above the ground, in the yard of the gas works of the city, where for a number of years they had been delivered for that purpose. Under the trestle there was a large opening, the beginning of a sewer, which ran into and across the yard of the gas works. After entering the yard, the sewer, being partly open and partly closed, ran alongside the engine room and the building in which the furnaces and retorts for making gas were situated.

On the day the car in question was delivered, the foreman of the lower gas works of the city directed McCauley, one of its employees, who alone, or with another of its employees, generally did this work, to unload the car. When McCauley commenced to unscrew the cap on the end of the discharge pipe he saw a little naptha. He turned the cap a little more, and, seeing the naptha coming a little freer, he shut it up, and reported to the foreman that there was a leak, and that he could not make the connection by himself. The foreman thereupon directed him to get Mr. Wakefield, the plaintiff's intestate, to go with him and make the connection. When they reached the

car, they undertook to make the connection in the usual way, Wakefield unscrewing the cap, and McCauley connecting the pipes; but when the cap came off the naptha came out with such force that both of them were unable to make the connection. McCauley jumped from under the car and went on top of it, removed the seal placed upon the plat covering the man-hole, and swung it to one side for the purpose of forcing the valve down so as to stop the flow of naptha. He then saw that the valve was out of order, that it was keyed improperly and that he could do nothing with it. He at once jumped off the car and rushed to the office of the foreman, some seventy-five yards distant, and informed him that the valve was not in place, and was out of order, and that all the naptha was escaping. They rushed back together, but just as they reached the trestle and car there was an explosion, which killed Wakefield, who was still under the car attempting to save the naptha. The explosion was caused by the gas from the naptha coming into contact with the fire of the gas house retorts as the naptha flowed near by in the sewer, partly open and partly closed, leading from the trestle by the gas house to the creek.

Upon examination the day after the accident it was ascertained that the key used for fastening the handle to the rod, by which the valve was raised, was under the bottom of the valve, holding it about three-fourths of an inch above the top of the discharge pipe, and that the handle was fastened to the rod by a piece of bent wire.

Wakefield's personal representative instituted her action on the case against the Standard Oil Company and the city of Richmond to recover damages for negligently causing the death of her intestate. Both defendants appeared and made defence. The trial resulted in a verdict and judgment in favor of the plaintiff against the Standard Oil Company. To that judgment the Oil Company obtained this writ of error.

The Oil Company denies its liability upon three grounds:

1st. That it did not owe to Wakefield the duty of keeping the valve in the car in a reasonably safe condition, and was not, therefore, guilty of negligence as to him.

2d. That the condition of the valve, even if the Oil Company were negligent, was not the proximate cause of his death.

3d. That if it was, he was guilty of contributory negligence.

As to the first ground of defence:   The contention of the Oil Company is that in order for negligence to be actionable it must occur in a breach of legal duty arising out of contract or otherwise, owing to the person unloading the cars; that there was no contractual relation existing between the plaintiff's intestate and the Oil Company, and that this being so the only duty upon which the plaintiff could rely was the duty owing to the public by the Oil Company, and that the character of the shipment was not so dangerous as to make a failure to properly adjust the valve to prevent the escape of the naptha a breach of duty to a third person who might suffer injury resulting from such failure.

It seems to be a well settled rule of the common law that a person who negligently uses a dangerous instrument, or article, or causes or authorizes its use by another in such a manner or under such circumstances that he has reason to know that it is likely to produce injury, is responsible for the natural and probable consequences of his act to any person injured who is not himself at fault.  The liability does not depend upon privity of contract between the parties to the action, but on the duty of every man to so use his own property as not to injure the persons or property of others.   *Carter* v. *Towne,* 98 Mass. 567, 96 Am. Dec. 682.

Whether this rule of the common law is applicable only, as the counsel of the Oil Company insists, to such agencies as are essentially and in their elements instruments of danger to life and property may be doubted.  Pollock, in his work on Torts,

(6th Ed.), p. 486, says that "gas (the ordinary illuminating gas) is not of itself perhaps a dangerous thing, but with atmospheric air forms a highly dangerous explosive mixture, and also makes the mixed air incapable of supporting life. Persons undertaking to deal with it are, therefore, bound at all events to use all reasonable diligence to prevent an escape which may have such results. A gas-fitter left an imperfectly connected pipe in the place where he was working under a contract with the occupier. A third person, a servant of that occupier, entering the room with a light in the fulfillment of his ordinary duties was hurt by an explosion due to the escape of gas from the pipe so left. The gas-fitter was held liable as for a misfeasance independent of a contract." In the case referred to (*Parry* v. *Smith,* 4 C. P. Div. L. R. 325, 327) the judge, delivering the opinion, said: "I think the plaintiff's right of action is founded upon a duty which I believe attaches in every case where a person is using or dealing with a highly dangerous thing, which, unless managed with the greatest care, is calculated to cause injury to bystanders. To support such a right of action there need be no privity between the party injured and him by whose breach of duty the injury is caused, nor any fraud, misrepresentation or concealment; nor need what is done amount to a public nuisance. It is a misfeasance independent of contract." See 2 Shear. & Red. on Neg. (5th Ed.), secs. 116, 690; Wharton on Neg., sec. 851; Smith (Horace) on Neg. pp. 231 to 236; Thompson on Neg. (1901 Ed.), secs. 821 to 829; *Heaven* v. *Pender,* 11 Q. B. Div. 513, 517.

It is a matter of common knowledge that naptha is a dangerous substance (and it is generally so treated by the courts), and the gas which it gives off when exposed to the atmosphere is liable to explosion by contact with fire, and when it does it is impossible to guard against its consequences, since it is instantaneous and extends to persons and property within its reach. See *Wellington* v. *Oil Co.,* 104 Mass. 64, 67; *Standard Oil Co.* v. *Tierney* (Ky.), 14 L. R. A. 677, 17 S. W. 1025, 36

Am. St. 595; *Wier's Appeal,* 74 Penna. St. 234; *Lee* v. *Vacuum Oil Co.,* 54 Hun. 156, 7 N. Y. Supp. 426.

In the case of the *Goodlander Mill Co.* v. *Standard Oil Co.,* 63 Fed. Rep. 400, 11 C. C. A. 253, 27 L. R. A. 583, so much relied on by the counsel of the plaintiff in error, it was held that crude petroleum was not essentially and in its elements dangerous, and that under the facts of that case, which are in some respects similar to the case under consideration, the Standard Oil Co. was not liable for the destruction of the property of a third person.   It was not denied, however, in that case, that it was the duty of the shipper, under its contract with the purchaser or consignee of the crude petroleum, to so equip its car that its contents might be safely discharged in the ordinary way by the exercise of due care.   Under that decision it was the duty of the Standard Oil Company, in shipping the naptha to the city of Richmond, even if gas naptha be no more dangerous than crude petroleum, to so equip its car that the naptha could be safely discharged in the ordinary way by the exercise of ordinary care on the part of the city.   If it owed this duty to the city, why did it not owe it to Wakefield and the other employees of the city, whose duty it was to unload the naptha; for the Oil Company must have known that when the car arrived at the city gas works it would have to be unloaded by the servants of the city?   It knew that the purchaser or consignee of the naptha, a municipal corporation, could only act through its employees.   Having this knowledge, even if the naptha was not so highly dangerous that the Oil Company owed to the public generally the duty of exercising ordinary care in shipping it, it at least owed that duty to the employees of the city, whose duty it was to unload the oil, so that they might do so in the ordinary way with safety.

Shear. & Red. on Neg., sec. 116, state the doctrine which should govern in cases like this, as follows: "Negligence which consists merely in a breach of contract will not afford ground for

an action by any one except a party to the contract, or a person for whose benefit the contract was avowedly made.   .   .   .
But where, in omitting to perform a contract, in whole or in part, one also omits to use ordinary care to avoid injury to third persons, who, as he could with a slight degree of care foresee, would be exposed to risk by his negligence, he should be held liable to such persons for injuries which are the proximate result of such omission."

Thompson, in his late work on Negligence, vol. 1, sec. 821, after citing cases illustrating the liability of vendors of dangerous goods, says, that "The doctrine of these cases, stated in a general way, is that if a person sells goods, chattels or machinery which possess some concealed defect, or tendency to do harm, such as will, according to the probabilities of ordinary experience, do harm to innocent persons, he must respond in damages if such harm ensue without the intervention of the negligence or fault of others; and upon principle it would be immaterial whether the knowledge of the concealed vice or defect was withheld from the purchaser through the vendor's unskillfulness, ignorance or fraud."

Watson (the author of the work on Damages for Personal Injuries), in his article on Negligence, in the Am. & Eng. Enc. of Law, vol. 21, p. 461-2, states the rule as follows: "Where there has been negligence in the construction or preparation of the article sold or supplied, that is, where, under the circumstances, injuries to the other contracting party or third persons might reasonably have been anticipated as a result of defects or errors therein, the question of privity of contract seems wholly immaterial. The liability depends upon the rule of natural and proximate cause and contemplation of consequences."

The reason upon which the rule, as stated by those text-writers, is based is clearly and strongly stated by Brett, M. R. (afterwards Lord Esher), in his dissenting opinion in *Heaven v. Pender,* L. R. 11 Q. B. Div. 503. "Every one," he says,

"ought by the universally recognized rules of right and wrong, to think so much with regard to the safety of others who might be jeopardized by his conduct; and if being in such circumstances he does not think, and in consequence neglects, or if he neglects to use ordinary care and skill and injury ensues, the law, which takes cognizance of and enforces the rules of right and wrong, will force him to give indemnity for the injury. . . . The proposition which these recognized cases suggest, and which is, therefore, to be deduced from them, is that whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or the property of the other, a duty arises to use ordinary care and skill to avoid such injury."

The next question is, was the Oil Company's negligence, if established, the proximate cause of Wakefield's death?

It is insisted that while the condition of the valve was in a sense the cause of the injury, the intervening and independent act of the city in its effort to unload the car was the efficient cause by which the negligent act of the Oil Company was rendered effective in producing the injury which was not the probable and natural cause of its act. Whilst the act of the city in taking the cap off the discharge pipe was an act intervening between the negligence of the Oil Company and the injury, was it such an intervening cause as excused that company?

It is said by Shearman & Red. on Neg., sec. 32, and their statement seems to be fully sustained by decided cases, that "In order to excuse the defendant, however, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slight-

est degree, produces the injury. It is a responsible one if it is the culpable act of a human being who is legally responsible for such act."

It is conceded and is clear that the city's act in attempting to unload the car was not a superseding cause. The city's act was one for which it was legally responsible, but was it a culpable act? It was not under the averments of the declaration, and there was evidence tending to sustain these averments, if the act of the city was one which might in the natural or ordinary course be anticipated as not entirely impossible, and the oil company's negligence was an essential link in the chain of causation. 1 Shear. & Red. on Neg., sec. 32; 1 Thompson on Neg., sec. 55; Watson on Damages for Personal Injuries, secs. 45 and 75.

The Supreme Judicial Court of Massachusetts, in *Lane* v. *Atlantic Works,* 111 Mass. 136, 139, states the rule on this subject as follows: "The act of a third person interevening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrong-doer if such act ought to have been foreseen. The original negligence still remains a culpable direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." See *Watts* v. *So. Bell Telephone Co.,* 100 Va. 45, 40 S. E. 107.

"In view of the rule," says Thompson on Neg., sec. 49, "that the question whether a given injury was the proximate or remote result of an antecedent wrong, is generally a question of fact for the jury, it is perceived that the rule last announced" (that of the Massachusetts court quoted) "is the rule of common sense and practical justice."

The intervening act of the city in attempting to unload the car was not only one which might, in the natural and ordinary course of things, be anticipated, but was one which the oil

company knew would occur, for it was a necessary act in order to unload the car in the usual and ordinary way. We are of opinion, therefore, that the averments of the declaration, in the second and fourth counts stated a case which showed that the Oil Company owed Wakefield the duty of exercising ordinary care to see that the valve was in a reasonably safe and proper condition, and that its alleged negligence in that respect was the proximate cause of his death.

It is unnecessary to decide whether or not the first and third counts, which did not charge that Wakefield was an employee of the city of Richmond, stated a good cause of action, as the case made by the evidence showed that he was an employee of the city, and was applicable to those counts alone. To reverse the case, even if we were of opinion that the first and third counts did not state a good cause of action, and to remand the case for a new trial upon the second and third counts would be reversing for a mere technical error, which in no way prejudiced the Oil Company if there be no other error in the proceedings.

The third and remaining ground of defence relied on by the Oil Company is that even if it had been guilty of negligence, Wakefield was guilty of contributory negligence.

Under the facts of the case, as already briefly stated, this was clearly a question for the jury.

This brings us to a consideration of the assignment of error to the action of the court in instructing the jury.

The giving of instruction No. 1 offered by the plaintiff and the refusal of the court to give instruction No. 30 offered by the defendant Oil Company, are assigned as errors. These instructions involved the question of the duty which the Oil Company owed to the plaintiff's intestate. As the court's action in giving the one and refusing the other was in accord with the view hereinbefore expressed in discussing that question, no further notice need be taken of those assignments of error.

The refusal of the court to give instruction No. 31 offered by

the Oil Company is also assigned as error.    By this instruction
the court was asked to tell the jury that they must disregard
all the evidence tending to show that the escape of the naptha
was due to the condition of the valve.    What has heretofore
been said in discussing the question of proximate cause, shows
that the court properly refused that instruction.

The giving of instructions Nos. 4 and 5, offered by the plain-
tiff, is assigned as error.    The former because there was no
evidence upon which to base it, and the latter because the evi-
dence upon which it was based was the knowledge of Bowen,
the foreman of the Oil Company's warehouse in Manchester,
and whose duty it was to load the tank cars, and his knowledge
of the conditions under which the tank cars were to be unloaded
at the city gas works was not notice to the Oil Company of those
conditions.    It was Bowen's duty to supervise the filling of the
tank cars for delivery to purchasers.    He had been at the gas
works one or more times to aid in unloading a car in which a
valve was frozen, under an understanding with the city or the
superintendent of the gas works to notify the Oil Company's
people at the warehouse when assistance was needed in unload-
ing leaking tanks.    He knew, or had the opportunity of know-
ing, the conditions under which the cars were unloaded at the
gas works.    The general rule is that knowledge acquired by the
agents of corporations when acting within the scope of their
agency becomes notice to or knowledge of the corporation for
all judicial purposes.    Thompson's Article on Corporations in
10 Cyc. L. & P., p. 1054.

The knowledge of Bowen, which the instruction in question
treated as notice to the Oil Company, was acquired whilst per-
forming duties for that company, and it would seem within the
scope of his agency.    The evidence tended to sustain the hy-
pothesis upon which each of the instructions (4 and 5) was
based, and the court did not err in giving them.

A number of other errors are assigned to the action of the

court in giving and refusing to give instructions asked for, but it is simply impossible in an opinion of reasonable length to discuss in detail all of the numerous objections made to the action of the court in dealing with more than thirty instructions, and covering over thirteen pages of the printed record. We have considered at length what seems to us to be the more important errors assigned. As to the others it is sufficient to say that we have fully considered them, and are of the opinion that the instructions given fairly submitted the case to the jury, that the court did not err in refusing to set aside the verdict of the jury, that we see no error in the case to the prejudice of the plaintiff in error, and that the judgment complained of should be affirmed.

*Affirmed.*