## CIRCUIT COURT OF FAIRFAX COUNTY

Joy Keophumihae et al.

v.

Charles R. Brewer, Jr., et al.

### Case No. (Law) 61692

By JUDGE F. BRUCE BACH

December 15, 1983

On November 28, 1983, I heard argument on several Demurrers to Plaintiffs' Second Amended Motion for Judgment. I am aware that as of that date not all Defendants had filed formal written demurrers with the court; however, my decision is based upon the oral argument presented in court rather than the Demurrers filed to Plaintiffs' First Amended Motion for Judgment.

### *Facts*

On August 28, 1982, the Defendant, Charles R. Brewer, Jr. ("Brewer, Jr.") allegedly shot the Plaintiff, Joy Keophumihae. As a consequence of the shooting, the Plaintiff allegedly suffered severe injuries, including quadri-

plegia. Suit for damages was filed by Plaintiff, Joy Keophumihae, and her mother, Plaintiff, Marion Keophumihae, against Defendants Brewer, Jr., C. Robert Brewer, Sr., Craig Brewer, the Athletic House, the Dominion Psychiatric Treatment Center, Martin Stein, M.D., David Charney, M.D., and Smith & Wesson, Inc.

Plaintiffs' Second Amended Motion for Judgment set forth a total of 10 counts. Count I is a cause of action against Brewer, Jr. for assault and battery to which no demurrer has been filed. The Demurrer to Count III, failure on the part of Brewer, Sr. to control the conduct of Brewer, Jr., was sustained in court on November 28th.

### Count II: Failure to Alert Rescue Personnel

Plaintiffs alleged that Defendant, Charles Brewer, Jr. (Brewer, Jr.) despite his majority, was under the care of Defendant, Charles Brewer, Sr. (Brewer, Sr.). Brewer, Sr. allegedly knew of his son's violent nature and tendencies, and specifically knew, or should have known, of his son's intent to harm Plaintiff. With this knowledge, Brewer, Sr. negligently stored "and/or" negligently entrusted to his son the handgun with which Brewer, Jr. shot and seriously injured Plaintiff. Plaintiff further alleged that Brewer, Sr. was informed by his son, by telephone shortly after the shooting, of the shooting and of his intent to leave the scene of the crime. Brewer, Sr. should therefore have known that Plaintiff was seriously injured and should have alerted rescue personnel of that fact. It is alleged that his intentional, negligent "and/or" grossly negligent failure to do so, caused Plaintiff to suffer far more serious injuries than she otherwise would have.

There is no separate cause of action for failure to alert rescue personnel recognized in Virginia. Such allegations could be part and parcel of a negligence action against an individual who has brought about the physical harm suffered by another. *Restatement (Second) of Torts*, Section 321 (1965). In other words, if Brewer, Sr., through his own intentional or negligent acts, created an unreasonable risk of harm to Plaintiff, he could be under a duty to exercise reasonable care to prevent further harm to Plaintiffs or to prevent the risk from taking effect. However, such an action has not been properly alleged in Count II, and, for that reason, Defendant Brewer, Sr.'s Demurrer thereto is sustained.

## Count IV: Negligent Storage of a Handgun

It is alleged that Brewer, Jr. stored the gun he used to shoot Plaintiff on property controlled by Defendants, Brewer, Sr., Craig Brewer "and/or" Athletic House. Plaintiffs allege that, with their knowledge of Brewer, Jr.'s violent nature, the Defendants intentionally "and/or" negligently failed to prevent Brewer, Jr. from coming into possession of the gun. They also allege that the Defendants' failure to secure the gun proximately caused Plaintiff's injuries.

Defendant Athletic House's Demurrer to this count is sustained. There is no allegation in Count IV which in any way indicates Athletic House's connection with this action. Furthermore, there is no allegation of the nature of the entity. If it is a corporation it would be liable for the acts of Defendants Brewer, Sr., and Craig Brewer only if the harm occurred while they acted within the scope of their employment or grew out of an act connected with their employment. *W. T. Grant Co.* v. *Owens*, 149 Va. 906, 913 (1928). Neither of the foregoing was alleged; therefore, the Demurrer of Athletic House to this count must be sustained.

Plaintiff has not set forth any facts which would indicate that Brewer, Sr., and Craig Brewer had sufficient control of the handgun to make them responsible for the storage thereof. Their Demurrer to Count IV is also sustained.

## Count V: Negligent Entrustment of Handgun

It is alleged that Defendants Brewer, Sr., Craig Brewer "and/or" Athletic House owned, possessed "and/or" controlled the handgun used to injure Plaintiff. Furthermore, they entrusted Defendant Brewer, Jr., with the firearm, which proximately caused Plaintiff's injuries.

Defendant Athletic House's Demurrer is sustained for the reasons stated in Count IV.

The Demurrer of Brewer, Jr., and Craig Brewer is overruled. A person who intentionally or negligently causes or authorizes the use by another of a dangerous instrument in such a manner or under such circumstances that he has reason to know that it is likely to produce injury, is responsible for the natural and probable conse-

quences of his act of entrustment to any person injured. *Standard Oil Co.* v. *Wakefield*, 102 Va. 824, 828 (1904); *Restatement (Second) Torts*, Section 302B (1965). Plaintiff has alleged sufficient facts to set forth a cause of action for negligent entrustment against these individual Defendants.

### Count VI: Failure to Warn

Count VI set forth allegations against all Defendants, except Smith & Wesson and Brewer, Jr., that Defendants knew of Brewer, Jr.'s mental and emotional instability and knew of his violent tendencies. Furthermore, it is alleged that Defendants knew or should have known that Brewer, Jr. was grossly maladjusted and violent and intended "to cause the minor plaintiff grievous harm and/or death," and allegedly knew he had access to a handgun. They allegedly knew how to contact Plaintiff to warn her of the above facts, but failed to do so. This failure to warn her was the direct or proximate result of her injuries.

Plaintiffs alleged that Defendant Athletic House was owned by Defendant Brewer, Sr., and Managed by Defendant Craig Brewer. This allegation does not state a cause of action against Athletic House. Again, for the reasons set forth above regarding the Demurrer of Athletic House to Count IV, I sustain its Demurrer to this, Count VI.

Technically, Defendant, Dr. Stein, did not file a Demurrer to Plaintiff's Motion for Judgment or the Amended Motion for Judgment. He did, however, through counsel, argue before this court his Demurrer to Counts VI, VII and X. I have, therefore, taken into consideration the Demurrer of Dr. Stein along with that of Dr. Charney in ruling that both Demurrers to Count VI, for the following reasons, are sustained.

There is no authority in Virginia law which would impose upon a professional (therapist, physician, psychiatrist, perhaps even an attorney), who is engaged in a professional client or patient relationship, the duty to protect third persons from foreseeable harm. The leading case upon which these Plaintiffs rely in support of Count VI is *Tarasoff* v. *Regents of University of California*, 17 Cal. 3d 425, 551 P.2d 334 (1976). The Court in *Tarasoff* ruled that when a therapist determines, or pursuant to the standard of his profession should determine, that

his patient presents a serious danger of violence, he is obligated to take reasonable care to protect the intended victim against such danger. Discharge of this duty may require the therapist to, among other steps, warn the intended victim of the danger. *Tarasoff*, 551 P.2d at 340.

In *Brady* v. *Hopper*, No. 83-JM-451 Civ. (D.C. Colo. Sept. 14, 1983), the court in granting a Motion to Dismiss adopted the ruling in *Tarasoff* as limited by later California cases. It ruled that the therapist-patient relationship under certain circumstances would give rise to a duty on the part of the therapist to protect third persons from harm. The duty owed is measured by the foreseeability of the risk. The therapist will only be liable for injuries inflicted upon third persons if his patient has verbalized specific threats to a readily identifiable victim. Absent specific threats to a readily identifiable victim, no duty arises on the part of the therapist to warn third persons of potential harm.

The *Tarasoff-Brady* rule, in addition to being the modern trend in this country, is based on sound principles of law and good common sense. It is easy to apply and morally correct. I agree with the Colorado court and accept the principle of law that, under certain circumstances, a therapist-patient relationship will give rise to a duty on the part of the therapist to protect a third person from foreseeable harm. This duty to protect may include warning the third person.

The Demurrers of Dr. Stein and Dr. Charney are sustained, however, because Plaintiff's Count VI does not set forth sufficient facts to show that Brewer, Jr. had voiced to either doctor specific threats against Plaintiff. Absent allegations of such specific threats to an identifiable victim (the infant Plaintiff), no cause of action will lie against the Defendant doctors.

I am not willing to extend the above principle to conclude that, under these circumstances, individuals other than professionals may be held liable for failure to protect third persons from harm whether or not they were informed of specific threats against the third person. There is no foundation whatsoever in law which would permit me, if I were so inclined, to do so. Therefore, the Demurrers of Brewer, Sr., and Craig Brewer to Count VI are sustained.

Dominion Psychiatric Treatment Center (Dominion)'s demurrer to Count VI is also sustained. There is no allegation that would directly connect Dominion to the cause of action in this case. A hospital cannot engage in a doctor-patient relationship which would give rise to a duty to protect third persons from foreseeable harm. Although there has been no allegation that Doctors Charney and Stein are employed by Dominion, a hospital is not responsible for the acts of an attending physician, either staff or outsiders, unless by contract it has assumed responsibility. A physician is an independent contractor and he alone is responsible for the exercise of professional skill and judgment. *Stuart Circle Hospital v. Curry*, 173 Va. 136, 149 (1939).

### Count VII, Negligent Release

Plaintiffs alleged that the Defendants, Charney, Stein and Dominion, with knowledge of Brewer, Jr.'s maladjusted behavior and violent tendencies, and with the knowledge that he intended to harm the Plaintiff, failed to prevent his discharge from the psychiatric center.

Defendant Dominion has Demurred to this count on the basis that it sets forth a cause of action for malpractice which was brought in violation of Va. Code Sections 8.01-581.1 *et seq.* (rules establishing medical malpractice review panels). Medical malpractice for the purposes of the Code is any tort based on health care or professional services rendered or which should have been rendered by a health care provider to a patient. Va. Code Section 8.01-581.1. This implies a breach of duty by a health care provider to a patient, not to a third party. Therefore, while Count VII sets forth a negligence action, it does not set forth a malpractice action which would require compliance with the medical malpractice provisions of the Code. However, for the reasons I sustained the Defendant Dominion's Demurrer to Count VI, I sustain its Demurrer to Count VII.

As to Defendants, Charney and Stein, I adopt and apply the court's ruling in Brady in determining whether these Defendants had a duty to Plaintiff to prevent the discharge of Brewer, Jr. from the psychiatric facility. Absent specific threats to an identifiable person, Defendants had no duty to Plaintiff to prevent Brewer, Jr.'s discharge. In addition, Plaintiff has made no allegation

that Defendants violated any statutes with regard to confinement of or commitment of mentally incompetent individuals which could affect her claim against these doctors. The Demurrers of Dr. Charney and Dr. Stein to Count VII are therefore sustained.

### Count VIII: Negligent Design, Manufacture and Distribution

In Count VIII, Plaintiffs alleged that the Smith & Wesson handgun used to shoot Plaintiff was defective, inherently and abnormally dangerous in its design, manufacture and distribution. The Plaintiffs further allege that the weapon has no legitimate purpose or social value which outweighs the risk it creates to members of the public, *all in contravention of public policy.*

Count VIII is a products liability action. In Virginia, recovery for a claim for construction defect, based on either negligence or breach of warranty, must be founded upon proof that the product was unreasonably dangerous *for its foreseeable purpose* when it left the product seller's control. *Chestnut* v. *Ford Motor Company*, 445 F.2d 967, 968 (4th Cir. 1971); *Logan* v. *Montgomery Ward*, 216 Va. 425, 428 (1975). The design of a product is defective when it is unreasonably dangerous for its ordinary and foreseeable purpose. *Chestnut*, 445 F.2d at 968. No such allegations have been made by Plaintiffs in Count VIII. In fact, there is no specific allegation that Defendant, Smith & Wesson, was the seller or distributor of the handgun to Brewer, Jr. Furthermore, Plaintiffs do not allege that distribution of the particular handgun in this case was in violation of any statute or constitutional provision. Plaintiffs are requesting this court to make a policy determination on the issues of manufacture, sale and distribution of handguns which it is without authority to do. Such a policy determination, if made, is exclusively within the purview of the legislature. As Plaintiffs have set forth no allegations essential to maintain a cause of action for product's liability, and alleged no violation by Smith & Wesson of Virginia law, Defendant's Demurrer to Count VIII is sustained.

### *Count IX: Strict Liability*

Plaintiffs alleged that Smith & Wesson is absolutely liable for Plaintiff's injuries as a result of its introduction into the stream of commerce of a defective and inherently and abnormally dangerous product (the handgun). This, again, is a policy determination that is best made by the legislature. Historically, the Virginia Legislature has given no indication that it considers handguns defective or inherently and abnormally dangerous. The requirements for obtaining concealed handgun permits were recently loosened by the legislature. Va. Code Section 18.2-308 (1982 Repl. Vol.). Our legislature or the federal congress could limit the introduction of handguns into commerce if they chose to do so for social or political reasons. They have not done so. Smith & Wesson should not be subjected to liability for doing what they are permitted to do under the laws of Virginia and the United States of America. Defendant, Smith & Wesson's, Demurrer to Count IX is sustained. Virginia does not recognize a cause of action in strict liability as set forth in Plaintiff's Count IX.

### *Count X: Loss of Services, Incurred Expenses*

Count X contains general allegations of damages for loss of services and incurred expenses of the infant Plaintiff's mother as a result of the shooting of the infant Plaintiff. Incorporated into Count X are all the allegations of preceding counts. Thus, as the Demurrers of Defendants, Charney, Stein and Dominion have been sustained to Counts VI and VII, their Demurrers to Count X are also sustained. The Demurrers of Brewer, Sr., Craig Brewer and Athletic House to Counts IV, and V, and Brewer, Sr.'s Demurrer to Count III, were also sustained; however, Brewer, Sr.'s and Craig Brewer's Demurrers to Count VI were overruled, therefore, their Demurrers to Count X are also overruled. Finally, Smith & Wesson's Demurrer to Count X is also sustained on the grounds that, as I have sustained their Demurrers to Counts VIII and IX, there is no basis to support the allegations of Count X.

Plaintiffs are given until December 29, 1983, to file an Amended Motion for Judgment, if they are so inclined.

April 24, 1984

This matter was before me on April 12, 1984, for argument on Demurrers to Counts II, III, IV, V, VI and VII of Plaintiffs' Fourth Amended Motion for Judgment. I sustained Defendant Brewer, Sr.'s Demurrer to Count II in Court. I rule on the remaining counts as follows:

### Count III: Negligent Storage

The Demurrers filed by Defendant Brewer, Sr. and Craig Brewer to Count III are overruled.

One who negligently uses a dangerous instrument or causes or authorizes its use by another in such a manner or under such circumstances that he has reason to know that it is likely to produce injury is responsible for the natural and probable consequences of his act to any person injured, who is not himself at fault. *Standard Oil Co.* v. *Wakefield*, 102 Va. 824, 828 (1904); *See also American Oil Co.* v. *Nicholas*, 156 Va. 1, 11 (1931) and *Ritter Corporation* v. *Rose*, 200 Va. 736, 742 (1959). I previously ruled that this language supports an action for negligent entrustment. I now rule that it also supports an action for negligent storage of a handgun.

Storage of a handgun is an aspect of the manner in which a handgun is used. It must necessarily be stored somewhere. If a person is negligent in the manner in which he stores his handgun, he has been negligent in his use thereof. In order to support a cause of action for negligence it is not necessary that Plaintiffs set forth the particulars of the negligence; an allegation of negligence is sufficient. Rule 3:16 of the Rules of the Supreme Court of Virginia.

I rule that Plaintiffs have set forth sufficient facts to support an allegation of negligent storage of a handgun.

### Count IV: Negligent Entrustment

The Demurrers of Brewer, Sr. and Craig Brewer to Count IV are overruled.

Defendants requested that I reconsider my earlier ruling in this matter. I deny that request and reaffirm the rulings set forth in my letter opinion of December

15, 1983. Plaintiffs have alleged sufficient facts to support a cause of action for negligent entrustment of a handgun.

### Count V: Failure to Warn

The Demurrers filed by Defendants Dominion Psychiatric Treatment Center ("Dominion"), Dr. Martin H. Stein ("Stein") and Dr. David L. Charney ("Charney") are overruled.

In my rulings of December 15, 1983, I stated that, in order to support a cause of action for negligent failure to warn against Doctors Charney and Stein, Plaintiff must allege that they were aware of specific threats made by Brewer, Jr. to harm the Plaintiff. Count V alleges, *inter alia*, that Dominion Hospital, through its agents and employees, and Doctors Charney and Stein were aware of such specific threats made by Brewer, Jr. to harm the Plaintiff. It is not necessary that the factual content of those threats and all circumstances surrounding the making of such threats be alleged. The case of *Brady v. Hopper*, 570 F. Supp. 1333 (D.C. Col. 1983), upon which I relied in my earlier rulings, merely holds that the element of foreseeability requires that a patient must have made specific threats against a readily identifiable victim. Absent this, the possibility of harm to a third-person is vague and speculative and no duty arises on the part of a physician or therapist to warn any party.

Plaintiffs' allegations are sufficient to state a cause of action for failure to warn. It remains a matter for proof at trial whether Defendants were in fact aware of specific threats to Plaintiffs and the factual content of any such threats.

With regard to Defendant Dominion, a hospital is not liable for the acts of its physician, whether a staff physician or an outsider, except where by contract it has assumed responsibility. *Stuart Circle Hospital Corp. v. Curry*, 173 Va. 136, 149 (1939). Counsel for Dominion argued that, in order for Dominion to be held liable for the acts of Doctors Charney and Stein, there must have existed a contract relationship between Dominion *and the doctors* whereby Dominion assumed responsibility for any acts of negligence. Absent the existence of that relationship, Plaintiffs have no cause of action against Dominion.

A physician is generally considered to be an independent contractor and, for that reason, a hospital is not held liable for the negligence of either staff or outside physicians. *Stuart Circle Hospital Corp.*, 173 Va. at 149. However, if the evidence of a particular case demonstrates that a medical practitioner was not an independent contractor in relation to the hospital, then the hospital at which that practitioner is employed may be held liable for the negligence of its employee. In that case it would be necessary to establish a contractual relationship between the hospital and the practitioner. On the other hand, if a hospital contracts and undertakes to perform medical and surgical duties beyond the scope of routine medical services, it can be held liable if the doctors it employs to render the duties are negligent in the performance thereof. Once a hospital has contracted to perform such duties, it may not escape liability by claiming that the physician it selected to render performance was an independent contractor. *Stuart Circle Hospital Corp.*, 173 Va. at 150; *see also*, Annot., 69 A.L.R.2d 305, 316 (1960).

There are, therefore, two instances in which a hospital may be liable for the negligence of its physician. It is this second instance that Plaintiffs are addressing in Count V of their Motion for Judgment. The allegation is made that Dominion entered into a contract with either Charles Brewer, Jr., alone, or with Charles Brewer, Jr., and his father, Charles Brewer, Sr., *binding* Dominion to provide Brewer, Jr. with proper psychiatric treatment. By such a contract, if proven, Dominion agreed to perform medical duties beyond the scope of routine medical services. Plaintiffs' allegation of a contractual relationship between Dominion and Brewer, Sr. and Brewer, Jr., in addition to the other allegations contained in Count V, are sufficient to support a cause of action for negligence against the hospital.

### Count VI: Negligent Release

I overrule the Demurrers to Count VI for the reasons stated in my above ruling with regard to Count V.

In my December 15th letter opinion, I stated that the rule of *Brady* v. *Hopper* would also apply to support a cause of action for negligent release. Plaintiffs' allegations are sufficient to comply with *Brady* and state

a cause of action against Dominion and Doctors Charney and Stein.

### Count VII: Loss of Services

The Demurrers to this count are overruled. As Plaintiffs have alleged a cause of action against Brewer, Sr. and Craig Brewer for negligence and against Dominion and Doctors Charney and Stein for negligence, they are entitled to sue all parties for the total loss of services.

### November 21, 1985

On December 15, 1983, I held in an opinion letter that "under certain circumstances a therapist-patient relationship will give rise to a duty on the part of the therapist to protect third persons from foreseeable harm." I also held that this duty to protect may include warning third persons ("Failure to Warn") and preventing the patient's discharge ("Negligent Release"). The duty to protect arises when the therapist has *knowledge* of an intention of future harm to a victim. I stated that absent a communication by the patient to the therapist of specific threats to a readily identifiable victim, no duty arises on the part of the therapist to warn third persons of potential harm (December 15, 1983, letter, Page 4) or to prevent the patient's discharge (December 15, 1983, letter, Page 6).

Since that letter opinion this case has moved through the pleading stage and discovery is nearly complete. The attorneys for the Plaintiff and for Defendants Charney, Stein and Dominion now agree on the facts. Plaintiff's excellent statement of facts filed on November 15, 1985, has been generally agreed to by Defendants. I will not restate all facts here.

It is enough to say that Brewer, Jr. had a long history of violent and bizarre behavior directed towards Plaintiff. She was well aware of his bizarre, violent behavior, as were the medical Defendants. This behavior led to the hospitalization and treatment of Brewer, Jr. The treatment is the subject of much of this suit. The medical Defendants were aware that Brewer, Jr. posed a potential danger to Joy. Joy was also aware that Brewer, Jr. posed a potential danger to her. Brewer was under Court order to stay away from Joy and at the time of her injury Joy

was hiding from Brewer at the home of a friend. Brewer found her and violently broke into the home, smashing down a locked bedroom door, finding and shooting Joy in her hiding place.

During Brewer's hospitalization, both Plaintiff and Defendants agree that there were no new threats against Joy. The medical Defendants made a medical judgment that Brewer, Jr. was safe to be released to the custody of his father. Hindsight tells us that this judgment was in error. Assuming, without deciding, that this medical judgment constituted malpractice, I still hold that without *knowledge* that Brewer, Jr. intended to harm Joy, the Defendants owed no duty to Plaintiff. Because Brewer did not express specific threats in the hospital of future intention to harm Joy, there was no duty on the doctor's part to warn Joy or to prevent the discharge of Brewer, Jr.

Moreover, I cannot find that there was any duty on the part of the medical Defendants to protect Joy by warning her of a danger of which she was well aware. Brewer's threats and violent behavior were communicated directly to Joy. The "specific threats" necessary to impose liability must be *latent* threats, unknown to the "readily identifiable victim."

For these reasons the Motion for Summary Judgment by Defendants Charney, Stein and Dominion are sustained and the "Failure to Warn" and "Negligent Release" counts are dismissed.